**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.   18-cr-00479-RBJ

UNITED STATES OF AMERICA,

       Plaintiff

v.

1.  DAVID PAUL RIETZ
       Defendant

## DEFENDANT'S MOTION FOR VARIANT SENTENCE

      Comes now the Defendant, by and through Daniel T. Smith, court appointed counsel, and requests the Court impose a variant sentence in this matter.  As grounds therefore the Defendant states as follows:

1. The defendant entered his plea of guilty to Count 10 of the Indictment on June 27, 2019.  The revised Presentence Investigation Report was filed with the Court on February 11, 2020 at Docket #102.  The Defendant's sentencing hearing is scheduled before this Court on March 27, 2020.

2. The Defendant requests this Court impose a variant sentence in this matter, which is a sentence that is less than the recommended advisory guideline, but is consistent and proper under the factors set forth for sentencing in 18 USC § 3553(a).  The sentence requested is 72 months.

3. Aside from the advisory guideline calculation this Court must determine prior to imposing a sentence, the Court must also consider other factors reference in section 3553(a):  the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, a sentence that will reflect the seriousness of the offense,  and that will promote respect for the law.  Any sentence must afford adequate deterrence for the conduct committed as well as protect the public from further crimes of the defendant.

Finally, the sentence must also afford the Defendant with educational training, medical care and other correctional treatment.

4. At the outset, the Defendant would point out to the Court that both the Parties to this case as well as the United States Probation Department, all agree that a variant sentence below the advisory guidelines is appropriate. (the government will recommend no more than 92 months Plea agreement Dk.#54 Para. 12, and the Probation Department 80 months PSR Dk.#102 pg. R-1).

5. As is apparent from the Indictment and the PSR, this criminal conduct involved the co-defendant Cartwright as well as Mr. Lyle who was charged in a separate case (18cr480-PAB). Judge Brimmer has sentenced Mr. Lyle to a term of 36 months, (dk.# 53 in 18cr480-PAB). This Court previously imposed a sentence of 60 months on the co-defendant Cartwright (Dk. # 81).

6. It is submitted by the Defendant that when a Court imposes sentences on multiple Defendants in reference to joint criminal conduct, that an important sentencing factor is the relative culpability of each Defendant as well as their comparative criminal histories.

7. As is shown in paragraphs 36-49 of the PSR, Mr. Lyle was integrally involved in the money laundering aspect of this criminal conduct. However, there does not appear to be evidence disclosing his involvement in the underlying fraud.

8. The situation with the co-defendant Cartwright is entirely different. It is correct that Cartwright pled guilty to a single money laundering count as opposed to the money laundering conspiracy charged in count 10. (the count to which Defendant Rietz pled guilty). However, it appears the government's view of the relative culpability of Rietz and Cartwright is the same.

9. In response to Cartwright's sentencing statement Dk. #60, the government filed its response at Dk. # 66. In its response, after describing the relative positions each held in the fraud, the government states at page 2, "Having installed Cross IT as the middleman, however, the co-defendants were perfectly positioned to execute the fraud." The government states at page 3 of dk.# 66 that "the co-defendants agreed to split the proceeds of the fraud fifty-fifty". The government goes on to argue in its response that Cartwright knew that he could

not simply pay Rietz directly his share of the ill-gotten proceeds, so it necessitated bringing Lyle in to carry out the laundering operation. Finally, in response to Cartwright's equivocation on when he knew he was involved in fraudulent conduct, the government states at page 3 of Dk. # 66, "The un disputed facts in the plea agreement and the Presentence Investigation Report are clear that Mr. Cartwright knew what he was doing from the beginning".

10. The criminal history records for both Cartwright and Lyle placed them in category one. That is the same category for the Defendant. PSR 75    As is stated in the PSR, the defendant has no criminal record either as a juvenile or an adult. His contact with the Court system appears to be only an expired license ticket for which he was fined.[1]

11. The defendants, Rietz and Cartwright also appear to have a similar reaction when their fraud began to unwind. As the PSR notes in para. 59, when Rietz was civilly sued by CHI for the alleged fraud he failed to answer questions truthfully during a deposition and hearing testimony in the civil case.[1]

12. When Cartwright did not receive payment on one of the fraudulent invoices, his response was to retain counsel and sue CHI. The suit was filed in Denver District Court and captioned *The Cross IT Group Corporation v. Catholic Health Initiatives* case #2014 CV 30068. As a part of that suit, Mr. Cartwright on July 14, 2014 filed his own affidavit in support of his "claims". (the affidavit is attached as Ex. 1) In Ex. 1 para.1, Cartwright states that he is the authorized representative of Cross IT. At para. 16, he states, "At no time have I devised a plan with David Rietz to unlawfully divest Catholic Health Initiatives of nearly $87 million…" He goes on to state at para. 20, "Cross It believes that the funds received from Catholic Health Initiatives were lawfully obtained for services rendered and to be rendered…".

13. A simple comparison of the plea agreements statement of facts for the Defendant Cartwright Dk. #45 to the Statement of facts in the Rietz  Dk.# 54 demonstrates the comparative culpability of each of these defendants. The

---

[1] While the report indicates a failure to appear warrant was issued in the matter it also indicates that the warrant was canceled

[2] The Defendant has not challenged the enhancement for obstruction of justice for this conduct

difference in the two plea agreements appears in the parties' different methodologies in computing a recommended advisory guideline calculation.

14. In the Defendant's calculation concerning loss, the parties used the intended loss figure minus the benefit CHI received from the purchase. This resulted in a loss of more than $25 million but less than $65 million. The enhancement was then an additional 22 points. In the Cartwright plea agreement, the loss calculation was actual loss and that resulted in a 20 point enhancement.

15. The second difference in the calculation was the Defendant receiving a 2 point enhancement for his role in the offense which was not applied in the Cartwright computation.

16. The other difference was the Defendant receiving a 2 point adjustment for obstruction of justice based upon his false statements in a civil law suit. Mr. Cartwright did not receive this adjustment even though he initiated litigation against CHI and filed a false affidavit in that matter (see Ex. 1).

17. Another difference in the two plea agreements appears at paragraph 8 of the Cartwright plea agreement Dk. # 45. Here, the government agrees to file a request for a downward departure in the guideline calculation if the Defendant cooperates with the government in its continued prosecution of this matter. In the government's response to Mr. Cartwright's sentencing statement (Dk.#66) it states at page 6 that the Defendant's cooperation was insufficient to warrant the government filing a request pursuant to USSG 5K1.1.

18. It is the Defendant's position that the relative culpability of he and Mr. Cartwright is very similar. It is probably best stated by the government in its response to Cartwright's sentencing statement Dk.#66 at page 5; "Mr. Cartwright was a knowing, willing, and necessary participant in the fraud. And he did the math. As witness A.V. explained, she found his notes computing on paper the total he would receive after taxes--$22 million." For this conduct, Mr. Cartwright received a 60 month sentence.

19. The defendant is a 60 year old man, who prior to this conduct had led a law abiding life. He has spent a vast majority of his adult life gainfully employed and supporting his family. He worked for the Coors Brewing Company for over 18

years. PSR 108.  He only left this employ because his position was dropped when Coors merged with Miller Molson Breweries.  After this employment he worked for CHI for 8 years.  His life was stable and committed until he embarked on the criminal conduct charged in this case.

20.  It is submitted, that the stability and admiral life style the Defendant lived is somewhat remarkable when you consider his upbringing.  His parents were devout Jehovah Witnesses and practiced their religion zealously.  Mr. Rietz as a child was forced into that lifestyle.  When in his teen years he rebelled and refused to continue in that church, he was kicked out of the family and shunned by anyone and everyone he knew at the time. PSR 78 and 79.

21.  He has been married to Pamela Rietz for some 29 years and they have 2 children.  His daughter Gabrielle is succeeding at the University of Colorado in a Masters program. PSR 83.  He maintains a good relationship with his son Stephen and his grandson Mason and grand daughter Clementine. PSR83 and 84

22.  He has long been involved in community activities especially in dog training and working with the canine unit of the Arvada police department.

23.  With this type of life history, the criminal conduct exhibited in this matter by the Defendant is certainly aberrational.  As significant as the fraud was, it only lasted for a very few months.  It can only have been fueled by greed which appears to have been the prime motivating factor of all 3 participants.

24.  Since the conduct ended in 2014, the Defendant's life has been nothing but tragic.  While trying to work in the attic of the family home in 2017, the Defendant fell through the ceiling causing  severe injuries.  The resultant surgeries have left the Defendant full of screws, rods and other hardware up and down his spine.  While trying to rehabilitate himself from that accident, the advent of this prosecution has only increased the Defendant's physical and mental demise.

25.  Even with his current maladies, both mental and physical, he has come to face the reality of his conduct and is prepared to face the Court and comply with the sentence is imposed by this Court.

26.  The Defendant submits, that a sentence of 72 months is sufficient but not greater than necessary to comply with the sentencing factors and requirements of 18 USC § 3553(a)

Respectfully submitted this 13th day of March , 2020.

/s Daniel T. Smith
*Daniel T. Smith*
4582 S. Ulster #1400
Denver, Co. 80237
Phone: 303-860-8100
Fax: 303-860-8018
E-mail: danieltsmith@qwestoffice.net
Attorney for David Paul Rietz

## CERTIFICATE OF SERVICE

I hereby certify that on March 13,  2020, I electronically filed **DEFENDANT'S MOTION FOR VARIANT SENTENCE**   with the Clerk of Court using the CM/ECF system who will send notification of such filing to all counsel of record.

/s Daniel T. Smith